UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ROSALEEN CLARKE, ISMAEL ALVARADO, and LARRY DON SMITH, Individually and On Behalf of All Others Similarly Situated**<br><br>**Plaintiffs,**<br><br>v.<br><br>**AMERICAN EXPRESS COMPANY, AMERICAN EXPRESS TRAVEL RELATED SERVICES, INC.,  AMERICAN EXPRESS CENTURION BANK, AND AMERICAN EXPRESS BANK, FSB**<br><br>Defendants. | **Case No: 1:12-cv-07496-LAK "ECF CASE"**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

## <u>PLAINTIFFS' CLASS ACTION COMPLAINT</u>

Plaintiffs Rosaleen Clarke, Ismael Alvarado, and Larry D. Smith, individually and on behalf of all others similarly situated (the "Class"), bring Plaintiffs' Class Action Complaint ("Complaint") against Defendants American Express Company, American Express Travel Related Services, Inc., American Express Centurion Bank, and American Express Bank, FSB (collectively, "Defendants"), and by and through their attorneys, allege, as follows:

### <u>NATURE OF THE ACTION</u>

1.      This class action involves Defendants' fraudulent, unfair, and unlawful course of conduct in marketing, selling, imposing, and/or administering products associated with its credit cards known as "American Express Account Protector," or other similar monikers that all offer similar coverage (collectively referred to as "Account Protector").   Defendants enrolled customers into Account Protector without the customers' permission ("slamming").  Defendants

exacerbate their fraud and deception by claiming that Plaintiffs and Class Members voluntarily enrolled in Account Protector, sending materials after the fact to justify the involuntary enrollment, attempting to convince slamming victims through deceptive marketing that they should stay enrolled in Account Protector instead of canceling the plan, and refusing to refund the money of customers who were involuntarily enrolled. Defendants also fraudulently, unfairly, and unlawfully marketed and administered Account Protector by enrolling customers who are not eligible for benefits or enrolling customers who are eligible but whom Defendants prevent from obtaining benefits under the plan.

2. Defendants violated federal and states' statutory and common law by imposing charges for Account Protector on customers who did not voluntarily enroll in the program and by the unfair, deceptive, and misleading manner in which Defendants enrolled consumers in Account Protector without their consent or knowledge and Defendants' subsequent refusal to refund money to customers who were involuntarily enrolled and paid for Account Protector. Defendants have also violated federal and various states' statutory and common law through the unfair, misleading, harassing, and bait-and-switch manner in which they (a) enrolled consumers (many of whom who were not eligible for benefits at the time of enrollment) and (b) administered claims for benefits.

3. Defendants market Account Protector through direct mail and solicit Account Protector customers over the phone. They represent Account Protector as a service that "protect[s] yourself and your account in the event of unplanned events," such as as involuntary unemployment, illness, or changes in family status by, depending on the circumstances, paying a portion of your American Express® balance each month or via a lump sum.

4. However, Defendants misrepresent and/or fail to disclose the real nature of

Account Protector. While, *inter alia*, representing to consumer that (a) "Account Protector from American Express helps pay the minimum monthly payment on your American Express® Card account when life puts pressure on your finances" and (b) that the consumer who elects to enroll in Account Protector will "[e]njoy financial protection while [the consumer] and [the consumer's] family adjust to life-changing events", Defendants make no effort to determine if the consumer is eligible for Account Protector benefits. As a result, the product is sold to consumers who are not eligible for coverage, in particular, senior citizens and the unemployed, self-employed, or seasonally employed. Thus, only after Defendants sell its Account Protector does it provide consumers with documentation imposing severe limitations on Account Protector benefits. Even then, Defendants' Account Protector is a maze of limitations, exclusions, and restrictions that make it impossible for consumers who voluntarily enroll to determine what Account Protector covers and whether purchasing it would be a sound financial choice. Defendants then use this maze of limitations, exclusions, restrictions and deceptive trade practices to make it difficult or impossible for consumers to get benefits even if they are eligible for them.

5. In addition to marketing Account Protector to those ineligible for benefits, Defendants impose Account Protector on customers who did not authorize the charges. Because these customers do not know this "coverage" has been imposed on them and that they were enrolled without their consent, they do not know they can avail themselves of it and do not have the necessary information to determine what Account Protector covers and whether it would be financially sound to continue paying for the plan.

6. As a result of Defendants' fraudulent, unfair, and unlawful practice of imposing Account Protector on some consumers and enrolling other consumers who are not eligible for

benefits, or whom Defendants prevent from receiving benefits with their ever-increasing restrictions and qualifications, Defendants have increased their profits due to a product which provides virtually no benefits to consumers who are nevertheless charged for the product month in and month out.

7.     Defendants' unfair, unlawful, and fraudulent practices with regard to their Account Protector product have created significant and substantial harm to Plaintiffs and the class, who have paid hundreds of millions or billions in fees for little or no benefit.

## PARTIES, JURISDICTION, AND VENUE

8.     Plaintiff Rosaleen Clarke ("Clarke") is citizen of the State of New York, residing in the city of New York.  Plaintiff Clarke was enrolled without her permission in Account Protector and charged for this program.

9.     Plaintiff Ismael Alvarado is a citizen of the State of New York, residing in the city of Slate Hill.  Plaintiff Ismael Alvarado willingly enrolled in Account Protector and paid the attendant monthly fee with the understanding that it would pay up to $10,000.00 if he suffered a life altering event.  Mr. Alvarado became disabled in January of 2012 due to a hand injury. American Express did not fully pay the benefit.  Additionally, he still incurs interest and is required to continue paying the monthly Account Protector fee.  To maintain this *de minimus* benefit, Plaintiff Alvarado is required to send in a classification from his doctor.  American Express is willing to pay nine (9) months of this so called benefit, while Plaintiff Alvarado is entitled to 24 months of benefits.  As such, Defendants' Account Protector proved to be worthless because Defendants administered the plan in bad faith, requiring increasing levels of qualification and proof, which were not disclosed to Plaintiff before purchasing Account Protector, in order to deny benefits to otherwise eligible members.

10.     Plaintiff Larry D. Smith is a citizen of the State of North Carolina, residing in the city of Eastover. Plaintiff Larry D. Smith willingly enrolled in Account Protector and paid the attendant monthly fee. Mr. Larry D. Smith was self-employed and when he fell on hard times because of losing his customer base and his business location, Plaintiff Smith attempted to file a claim for benefits. American Express would not help him submit a claim for benefits because they said that he would not qualify. As such, Defendants' Account Protector proved to be worthless because Defendants administered the plan in bad faith, requiring increasing levels of qualification and proof, which were not disclosed to Plaintiff before purchasing Account Protector, in order to deny benefits to otherwise eligible members.

11.     Defendant American Express Company is a bank holding company incorporated or otherwise organized under the laws of New York whose principal place of business is in New York, New York. Defendant American Express Company and the parent company of American Express Travel Related Services Company, Inc.

12.     Defendant American Express Travel Related Services Company, Inc. is a New York corporation whose principle place of business is located in the State of New York. Defendant American Express Travel Related Services Company, Inc. is a wholly owned subsidiary of the American Express Company. Defendant American Express Travel Related Services Company, Inc. is the direct parent company of Defendant American Express Centurion Bank and American Express Bank, FSB.

13.     Defendant American Express Centurion Bank is a Utah is a state chartered bank with its main office and headquarters located at: 4315 South 2700 West, Mail Code: 02-01-47 Salt Lake City, Utah 84184. Defendant American Express Centurion Bank is a wholly owned subsidiary of American Express Travel Related Services Company, Inc. and is, among other

things, in the business of issuing charge cards and credit cards to persons and/or business entities.

14.     According to 12 U.S.C. § 1464(x), federal savings associations are to be deemed citizens of "the State in which such savings association has its home office." American Express Bank, FSB is chartered as a Savings Association. Its main office and headquarters located at 4315 South 2700 West, Salt Lake City, Utah, 84184. Defendant American Express Bank, FSB is a wholly owned subsidiary of American Express Travel Related Services Company, Inc. and is, among other things, in the business of issuing charge cards and credit cards to persons and/or business entities.

15.     Hereinafter, "American Express" or "Defendants" or "Defendant" refers to Defendant American Express Company, Defendant American Express Travel Related Services Company, Inc., Defendant American Express Centurion Bank, and Defendant American Express Bank, FSB.

16.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution or laws of the United States and the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and (6), in that:

(a)     the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs;

(b)     this is a class action involving 100 or more class members;

(c)     this is a class action in which at least one member of the Plaintiff class is a citizen of a State different from at least one Defendant.

17.     This Court has personal jurisdiction over Defendants named herein because Defendants are registered to do business in New York and are registered with the New York Secretary of State, or transact sufficient business in New York, have sufficient minimum contacts with New York, or otherwise intentionally avail themselves of the markets within New

York through the issuance of credit cards, monthly statements, and other products and services such as Account Protector to New York citizens and residents, rendering the exercise of jurisdiction by the this Court permissible under traditional notions of fair play and substantial justice.

18.     Venue is proper under 28 U.S.C. § 1391 in that two Defendants do business in this District and Plaintiff and a portion of the proposed class reside in it.

## FACTUAL ALLEGATIONS

19.     American Express is the largest general purpose credit card issuer in the United States and in 2011 was first in the country in purchase volume (spending at merchants) for general purchase credit cards. In 2011, American Express had 25.34% of the market share by credit card issuer. Defendant American Express Centurion Bank and American Express Bank, FSB are the issuers of American Express® Cards.

20.     Defendants advertise their Account Protector program as a program that (a) "helps pay the minimum monthly payment on your American Express® Card account when life puts pressure on your finances" and (b) provides "financial protection while [the consumer] and [the consumer's] family adjust to life-changing events." Defendants make no effort to determine if the consumer is eligible for Account Protector benefits.

21.     Account Protector provides for some form of benefit upon the occurrence of a "Qualifying Event." "Qualifying Event" means, separately and collectively, Involuntary Unemployment, Disability, Hospitalization, Leave of Absence, Death, or Life Event. "Life Event" means marriage, birth of your child, adoption of child(ren), relocation of more than 150 miles from your residence, starting college, and other life-changing events.

22.     Defendants impose Account Protector on some consumers, through direct mail

marketing or through phone calls, by asking them to sign up when they activate their credit cards and then enrolling them in Account Protector even if they have not consented to enroll or merely asked to see more information before deciding to enroll.

23.     Defendants do not require any affirmative act by customers to enroll and enroll customers without their consent. Defendants attempt to cover up their failure to obtain consent by sending materials after the fact, if at all; however, this misleading practice in no way excuses Defendants' failure to secure initial authorization to enroll consumers. Even if Defendants send written materials to consumers who did not voluntarily enroll, they would have no reason to look for or review such materials to affirmatively opt out.

24.     As a result of Defendants' actions, many consumers are unaware they are enrolled in Account Protector. When Account Protector is imposed without consumers' consent, the only way consumers could ever know they have been enrolled in Account Protector and are being charged for this product is by noticing a line-item fee listed on their monthly credit card statements. Rather than provide a separate invoice for these monthly fees, Defendants charge the fee directly to consumers' credit cards.

25.     Defendants provide misleading and false information to customers by involuntarily enrolling them in Account Protector and then claiming that they consented to enrollment in those instances when consumers challenge or question the unauthorized fees.

26.     Even for consumers who do choose to enroll voluntarily in Account Protector, the terms of Defendants' Account Protector scheme are complicated and difficult for a layperson to understand. The restrictions, limitations, and exclusions associated with "protected events" and the proof required to establish them are expansive and confusing and are not adequately explained to consumers before they are enrolled in Account Protector.

27.     Days or weeks after their enrollment in Account Protector, Defendants may, in some instances, mail written material to the consumers. Given the confusing way the written materials present the terms and conditions of Account Protector, it is extremely difficult for a subscriber to decipher those provisions. According to the written materials, which are only provided (if at all) after subscribers have already been enrolled in the plan, there are numerous restrictions and qualifications on Account Protector coverage, but because these restrictions are in small print , incomplete, indecipherable, misleading, and use obfuscatory language, they are not readily comprehensible to subscribers. It is virtually impossible for the subscriber to determine all of the exclusions and limitations of Account Protector and the proof required for claims, or the value of the product, based on what is provided.

28.     Defendants shift their burden and duty of full disclosure prior to the sale to the consumer and require subscribers to decipher the terms of the product after it has already been purchased and take action to cancel it. Defendants characterize this sales scheme as a trial period during which consumers can "[t]ry Account Protector for 30 days." In fact, the obligation is a negative option in that American Express® does not provide any materials before enrolling the customer and, instead, states: "If you're not satisfied we'll refund your money."

29.     Defendants do not adequately describe or explain the exclusions to prospective subscribers so they can determine whether they have certain characteristics or meet certain factors that would bar them from being eligible for benefits under Account Protector, even though Defendants have a common practice of limitations on full coverage based on exclusions.

30.     Defendants make no effort at the time of sale to determine if the Account Protector coverage is viable for the consumer before charging for the product. For example, Defendants charge numerous senior citizens and retired persons for Account Protector although

they are excluded from receiving benefits because they are not employed.

31.     Before selling Account Protector, Defendants do not ask consumers any questions to determine if Account Protector is appropriate for the customer. Instead, Defendants collect Account Protector fees from consumers and it is only at the point that consumers may actually try to receive the benefits for which they have paid hundreds or thousands of dollars in fees that Defendants ask questions about the customer's age, physical condition, or employment status. Defendants then use the information collected during the claims administration process to deny claims. Defendants' practice is known as "post claims underwriting."

32.     Defendants manipulate the claims administration process through "post-claims underwriting," thereby ensuring that they can collect the most Account Protector fees possible (whether a person is eligible or not, or consents or not), and then deny claims for benefits to persons who, at the time Account Protector was sold:

    (a)     was already retired;

    (b)     was not working;

    (c)     was self employed;

    (d)     was employed part time;

    (e)     was employed on a seasonal basis; and/or

    (f)     was hospitalized or disabled.

For instance, senior citizens are charged for the product, although they could not receive benefits for job loss, family leave, life events, or short term and long term disability benefits should they become seriously ill and unable to make credit card payments. Senior citizens generally are not wage earners and thus are not protected persons under the terms of Account Protector.

33.    Since Defendants engage in post-claim underwriting and each claim they pay decreases their profits from the product, they make it nearly impossible or impossible for consumers to actually get benefits through Account Protector even when they are eligible for them.  Even if consumers meet the requirements set out in a confusing and misleading manner in the Terms and Conditions of Account Protector, Defendants then employ obstructionist tactics to prolong the claims process and make customers jump through hoops by imposing further restrictions or qualifications on them, all while customers continue to rack up fees for Account Protector, causing undue delay and hardship for the consumers while Defendants continue to refuse to pay them the benefits to which they are entitled.

34.    Defendants also manipulate the administration process by misleading consumers who call to inquire about submitting claims.  Defendants inform consumers that submitting a claim would be futile because they are ineligible to receive benefits or provide consumers with incorrect information about submitting a claim, including the type of information necessary to substantiate a claim, and the timing in which that information must be submitted.

35.    Defendants provide themselves with unfettered and unchallengeable discretion in the claims administration process in deciding whether consumers are eligible to receive benefits or whether they have complied with Defendants' bureaucracy.  Defendants exercise their discretion in bad faith in order to maximize the number of claims that they can deny both, *inter alia*, by blocking and stonewalling the filing of claims or by setting up arbitrary hurdles to cross before a claim is even filed and then denying claims for arbitrary reasons or no reason at all.

36.    The cost of Account Protector is a monthly charge of approximately $0.85 per $100 of a subscriber's month-ending credit card balance.  The amount of fees collected by Defendants is unconscionable because of the infrequency with which it pays claims, and because

the charge for the "coverage" is excessive for the "benefit" received. Defendants have collected hundreds of millions or billions of dollars from class members while paying out little in the way of benefits.

37.    In contrast to Defendants' practices and their post-claim underwriting, loss ratios in the model rule proposed by the National Association of Insurance Commissioners for credit life and disability insurance (which is regularly criticized as being of limited value to cardholders), is 60% and most states have loss ratios of 50-60%.  If state-regulated credit insurance companies deny benefit claims, they must refund the excess premiums to the policyholders and lower the premium rates charged going forward.  Defendants do not pay refunds of Account Protector fees when benefits are denied and they do not charge fees that are rationally or reasonably based on loss-ratio experience.

38.    The skewed ratio for Defendants' payout from Account Protector claims is a direct result of Defendants' deceptive scheme.  By not seeking information from consumers prior to charging for the product or by placing Account Protector without consent, Defendants are able to charge a high number of consumers $0.85 per $100 in bill cycle credit balance (or, for instance, $85.00 per month just for Account Protector coverage on a $10,000 balance), resulting in estimated charges to its cardholders of tens of millions of dollars per month.

39.    Defendants' practices cause substantial and significant harm to consumers.  For instance, the Consumer Financial Protection Board is currently investigating the practices associated with Defendants', as well as other companies', debt suspension / debt cancellation products.

40.    Defendants also imposed take-it-or-leave-it arbitration clauses in the underlying credit card contracts with Plaintiffs and the Class.  These clauses are not enforceable or

applicable to the claims here involving involuntary enrollment in Account Protector for at least the following reasons: (a) there are no arbitration clauses in the Account Protector agreements themselves and therefore the agreement to arbitrate is separate and independent of the Account Protector plans at issue here, and Plaintiffs did not agree to arbitrate their claims with respect to Account Protector; (b) alternatively, there was fraud in the inducement of any agreement to arbitrate in that consumers were not even informed, and did not consent, to the creation of an agreement for Account Protector, let alone an agreement to arbitrate any claims involving Account Protector, because they were slamming victims, thereby preventing adequate contract formation.   These clauses are not enforceable or applicable to the claims here involving voluntary enrollment in Account Protector for at least the following reasons: (a) there are no arbitration clauses in the Account Protector agreements themselves and therefore the agreement to arbitrate is separate and independent of the Account Protector plans at issue here and Plaintiffs did not agree to arbitrate their claims with respect to Account Protector; (b) alternatively, there was fraud in the inducement of any agreement to arbitrate any claims involving Account Protector since consumers were misled as to their eligibility for and ability to get benefits from the Account Protector plans.

## PLAINTIFF ROSALEEN CLARKE

41.     Plaintiff Clarke is a citizen of the State of New York, residing in the city of New York.

42.     In or around October of 2010, Plaintiff Clarke discovered unauthorized charges for "Account Protector" on her American Express® Card credit card statements.   She then reviewed her previous statements and discovered additional charges for Account Protector on several other American Express® credit card statements.

43.     Because Plaintiff Clarke had never enrolled in the Account Protector program, she called American Express to complain about the charges and seek reversal of the charges.

44.     Plaintiff Clarke did not and would never have voluntarily enrolled in Account Protector.

45.     Plaintiff Clarke has paid hundreds, if not thousands, of dollars in Account Protector fees, plus interest.

46.     Defendants have not refunded all of the money Plaintiff Clarke paid towards the Account Protector fees, even though she did not voluntarily enroll in the program and requested a full refund for the unauthorized charges.

### PLAINTIFF ISMAEL ALVARADO

47.     Plaintiff Alvarado is a citizen of the state of New York, residing in the city of Slate Hill.

48.     At all relevant times, Plaintiff Alvarado was an American Express® Card Member. Plaintiff Alvarado willingly enrolled in Account Protector and was charged for and paid the associated fees.

49.     Ismael Alvarado submitted a claim for disability benefits under the Account Protector plan for permanent disability.

50.     Defendants indicated that they would only pay Plaintiff Alvarado the benefit payment amount for nine (9) months, subject to supplying the periodic doctor notes required under the plan. Plaintiff Alvarado was required to continue paying the fees associated with the plan even during his qualifying event coverage period. As such, Defendants' Account Protector proved to be worthless because Defendants administered the plan in bad faith, requiring increasing levels of qualification and proof, which were not disclosed to Plaintiff before

purchasing Account Protector,.

## PLAINTIFF LARRY D. SMITH

51. Plaintiff Larry D. Smith is a citizen of the State of North Carolina, residing in the city of Eastover. Plaintiff Larry D. Smith willingly enrolled in Account Protector and paid the attendant monthly fee. Mr. Larry D. Smith was self-employed, and when he fell on hard times because of losing his customer base and his business location, he attempted to file a claim for benefits. American Express would not help him submit a claim for benefits because they said that he would not qualify. As such, Defendants' Account Protector proved to be worthless because Defendants administered the plan in bad faith, requiring increasing levels of qualification and proof, which were not disclosed to Plaintiff before purchasing Account Protector,.

## TOLLING THE STATUTE OF LIMITATIONS

52. Any applicable statutes of limitation have been tolled by Defendants' knowing and active concealment of the facts as alleged herein. Plaintiffs and members of the Class have been kept ignorant of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiffs and members of the Class could not reasonably have discovered the true nature of the Account Protector Plan.

53. Defendants are and have been under a continuing duty to disclose to the Plaintiffs and the Class the true character, quality, and nature of the Account Protector Plan. Because of its knowing, affirmative, and/or active concealment of the true character, quality and nature of the Plan, Defendants are estopped from relying on any statutes of limitation in their defense of this action.

## CLASS ACTION ALLEGATIONS

54.    Plaintiffs bring this action on their own behalf and on behalf of a Class of all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

55.    Plaintiffs bring this action as class representatives to recover damages and/or refunds from Defendants' breach of contract, breach of the covenant of good faith and fair dealing, fraud, violations of various states' consumer protection laws, and for injunctive relief, declaratory judgment, and restitution.

56.    This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the Federal Rules of Civil Procedure Rule 23(a) and (b).

57.    Plaintiffs seek certification of a Class of all persons in the United States who were enrolled in Account Protector during the relevant time period.

58.    Plaintiff Clarke also seek certification on behalf of the following "Involuntary Enrollment Subclass": All persons in the United States included in the Class who did not voluntarily sign up for Account Protector.

59.    Plaintiffs Alvarado and Smith also seek certification on behalf of the following "Voluntary Enrollment Subclass": All persons in the United States included in the Class who were unable to use the Account Protector due to exclusions, delay, or denials by Defendants.

60.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

61.    Excluded from the Class are:

a.    Defendants and any entities in which Defendants have a controlling interest;

b.    Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendants;

c.    The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d.    Persons or entities with claims for personal injury, wrongful death, and/or emotional distress;

e.    All persons or entities that properly execute and timely file a request for exclusion from the Class;

f.    Any attorneys representing the Plaintiffs or the Class; and

g.    All governmental entities.

62.    Numerosity—Fed. R. Civ. P. 23(a)(1). The Class is comprised of over 100 people and possibly thousands of individuals who were Defendants' customers, the joinder of which in one action would be impracticable. The exact number or identification of the Class members is presently unknown. The identity of the Class members is ascertainable and can be easily determined based on Defendants' records.

63.    Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2), 23(b)(3). The questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

a.    Whether Defendants' enrollment, billing, and marketing scheme as alleged in this Complaint is fraudulent, deceptive, unlawful, and/or unfair in violation of common law and the law of the various states deceptive trade practices acts;

b.    Whether Defendants' imposition of Account Protector on individuals who did not sign up for it is unlawful;

c.    Whether Defendants' imposition of Account Protector on individuals who did not sign up for it is fraudulent or deceptive;

     d.     Whether Defendants' imposition of Account Protector on individuals who did not sign up for it is unfair;

     e.     Whether Defendants' involuntary enrollment of customers in their Account Protector program is misleading;

     f.     Whether Defendants' voluntary enrollment of customers who were not eligible for benefits is unlawful;

     g.     Whether Defendants' voluntary enrollment of customers who were not eligible for benefits is fraudulent or deceptive;

     h.     Whether Defendants' voluntary enrollment of customers who were not eligible for benefits is unfair;

     i.     Whether Defendants' voluntary enrollment of customers who were not eligible for benefits is misleading;

     j.     Whether Defendants' conduct to frustrate and complicate the claims process and denial of Account Protector benefits to customers who were eligible for them is unlawful;

     k.     Whether Defendants' administration of Account Protector in enrolling customers without their consent and refusing to refund their money is fraudulent, deceptive, unfair, and/or unlawful;

     l.     Whether Defendants' involuntary enrollment of customers in Account Protector and failure to inform its customers of their enrollment is fraudulent;

     m.     Whether Defendants' marketing of Account Protector to individuals ineligible for certain benefits is a breach of contract;

     n.     Whether Defendants' marketing of Account Protector to individuals ineligible for certain benefits is misleading and/or in bad faith;

o.     Whether Defendants' administration of Account Protector constitutes a breach of contract;

p.     Whether Defendants' administration of the Account Protector program has been in bad faith;

q.     Whether Plaintiffs and the Class members are entitled to restitution of all amounts acquired by Defendants through their common and uniform scheme;

r.     Whether Plaintiffs and the Class members are entitled to prospective injunctive relief enjoining Defendants from continuing to engage in the fraudulent, deceitful, unlawful, and unfair common scheme as alleged in this Complaint; and

s.     Whether Plaintiffs and the Class members are entitled to recover compensatory and punitive damages as a result of Defendants' wrongful scheme.

64.     Typicality—Fed. R. Civ. P. 23(a)(3). Plaintiffs assert claims that are typical of the entire Class, in that Plaintiffs paid for Account Protector even though they were not eligible for benefits or were prevented from receiving benefits or they did not voluntarily enroll in Account Protector and did not authorize the charges.

65.     Adequacy—Fed. R. Civ. P. 23(a)(4); 23(g)(1).     Plaintiffs are adequate representatives of the Class because they fit within the class definition and their interests do not conflict with the interests of the Members of the Class they seek to represent.  Plaintiffs are represented by experienced Class Counsel.  Class Counsel have litigated numerous class actions, and Plaintiffs' counsel intends to prosecute this action vigorously for the benefit of the entire Class.  Plaintiffs and Class Counsel can fairly and adequately protect the interests of all of the Members of the Class.

66.     Superiority—Fed. R. Civ. P. 23(b)(3). The class action is the best available

method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Plaintiffs and members of the Class have suffered irreparable harm as a result of Defendants' bad faith, fraudulent, deceitful, unlawful, and unfair conduct. Because of the size of the individual Class members' claims, no Class members could afford to seek legal redress for the wrongs identified in this Complaint. Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses, as Defendants continue to engage in the bad faith, unlawful, unfair, and deceptive conduct that is the subject of this Complaint, and Defendants would be permitted to retain the proceeds of their violations of law. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
#### (Breach of Contract)
#### (On Behalf of Plaintiff Alvarado, Plaintiff Smith, and certain Voluntary Enrollment Subclass Members)

67.     Plaintiff Alvarado and Plaintiff Smith, (hereinafter collectively referred to in this Count as ("Plaintiffs") restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

68.     Plaintiffs and certain Members of the Voluntary Enrollment Subclass purchased Account Protector from Defendants with the justified expectation that they were eligible for the benefits spelled out in Defendants' advertising and marketing.

69.     Plaintiffs and certain Voluntary Enrollment Subclass Members paid monthly Account Protector fees to obtain the purported benefits of Account Protector.

70.     Plaintiffs and certain Voluntary Enrollment Subclass Members have fulfilled their obligation under the sales contract by paying the Account Protector fees.

71.     Despite the full performance by Plaintiffs and certain Voluntary Enrollment Subclass Members, Defendants did not, in fact, provide Plaintiffs or certain of the Voluntary Enrollment Subclass Members with the benefits for which they had paid.

72.     When Plaintiff Alvarado, Plaintiff Smith, and certain Voluntary Enrollment Subclass Members attempted to apply for benefits, Defendants impeded their efforts by delaying their responses and/or asking for further qualifications or proof not specified in the Terms and Conditions for Account Protector, and then denying their claims or not fully paying their claims.

73.     Accordingly, Defendants materially breached their contract with Plaintiffs and certain Voluntary Enrollment Subclass Members, which has resulted in harm to Plaintiffs and certain Voluntary Enrollment Subclass Members, who did not receive the benefit of their bargain.

74.     By reason of the foregoing, Defendants have breached the parties' contracts and are liable to Plaintiffs and certain of the Voluntary Enrollment Subclass Members.

### SECOND CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)
### (On Behalf of Plaintiff Alvarado, Plaintiff Smith, and the Voluntary Enrollment Subclass)

75.     Plaintiffs Alvarado and Smith (hereinafter collectively referred to in this Count as ("Plaintiffs") restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

76.     As a direct and proximate result of Defendants' actions as described herein, Plaintiffs and the Voluntary Enrollment Subclass have suffered, and will continue to suffer, injury in fact and have lost money as a result of Defendants' breach.

77.   Plaintiffs and the Voluntary Enrollment Subclass Members purchased Account Protector with the expectation that they would receive benefits after a qualifying or "life-changing event", as described in Defendants' advertising.

78.   Defendants enrolled Plaintiffs and the Voluntary Enrollment Subclass Members in Account Protector when they were not eligible for certain benefits because of Account Protector's restrictions and exclusions.

79.   Defendants' processing of claims for benefits by Plaintiffs and the Voluntary Enrollment Subclass other Subclass Members involved delay tactics and ever-increasing restrictions, qualifications, and proof in order to receive benefits, and even after Plaintiffs and the Voluntary Enrollment Subclass Members submitted such proof or demonstrated their qualifications, they were denied Account Protector benefits.

80.   As such, Plaintiffs and the Voluntary Enrollment Subclass Members have not obtained the benefit of their bargain from Defendants, and the essential purpose of the Account Protector sales contract has been frustrated.

81.   Good faith is an element of the contract pertaining to the Account Protector plan. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

82.   Under the Account Protector Agreement, Defendants impliedly promise to

administer these contract obligations in accordance with principles of good faith and fair dealing.

83.     By reason of the foregoing, Defendants have breached the covenant of good faith and fair dealing through its policies and practices as alleged herein and are liable to Plaintiffs and the Voluntary Enrollment Subclass.

84.     Plaintiffs and the Voluntary Enrollment Subclass have performed all, or substantially all, of the obligations imposed on them under the Account Protector Addendum Agreement.

85.     Plaintiffs and the Voluntary Enrollment Subclass have sustained damages as a result of Defendants' breach of the covenant of good faith and fair dealing.

**THIRD CAUSE OF ACTION**
**(Violation of <u>N.Y. Gen. Bus. Law §§ 349</u>, *et seq*. (Consol.)**
**(On Behalf of Plaintiffs Clarke, Plaintiff Alvarado, Plaintiff Smith, and the Class**
**and Subclasses from New York)**

86.     Plaintiffs Clarke, Alvarado, and Smith (collectively referred to as "Plaintiffs" for purposes of this Count) restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

87.     New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York State.

88.     Defendants conduct "business" or provide a "service" within the meaning of New York General Business Law § 349 in marketing, selling, and/or administering Account Protector.

89.     Defendants engage, without limitation, in the following deceptive acts and/or practices in violation of New York General Business Law § 349:

    (a)     unilaterally imposing upon Plaintiff Clarke and the Involuntary Enrollment Subclass Members, the Account Protector plan without their permission;

(b)     failing to disclose to Plaintiff Clarke and the Involuntary Enrollment Subclass Members that they were being enrolled and could only affirmatively opt out if they did not wish to be enrolled;

(c)     refusing to refund the money that Plaintiff Clarke and the Involuntary Enrollment Subclass Members paid for Account Protector when they were involuntarily enrolled;

(d)     misrepresenting to Plaintiff Alvarado, Plaintiff Smith, and the Voluntary Enrollment Subclass that they were eligible, would remain eligible, and would receive benefits under Account Protector;

(e)     concealing the true nature of the benefits and exclusions of Account Protector and the proof required for claims from Plaintiff Alvarez, Plaintiff Smith, and the Voluntary Enrollment Subclass; and

(f)     denying Plaintiff Alvarado, Plaintiff Smith, and certain members of the Voluntary Enrollment Class the promised benefits of the Account Protector program.

90.     By reason of the conduct alleged above, Defendants are engaging in deceptive conduct in violation of New York General Business Law § 349.

91.     Defendants' conduct of involuntarily enrolling customers in Account Protector and then refusing to refund their money, and voluntarily enrolling customers who were ineligible for benefits or who were eligible but could not get benefits from Account Protector is "deceptive" because:

(a) it offends established public policy protecting consumers from deceptive practices and/or is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to customers; and/or

(b) it has deceived and/or is likely to deceive Plaintiffs and other reasonable consumers.

92.     Defendants' deceptive acts and practices alleged herein were specifically designed to enroll Plaintiffs and Class Members in Account Protector.

93.     Defendants' deceptive acts and practices alleged herein have deceived and/or are likely to deceive Plaintiffs and other reasonable consumers.

94.     Defendants' misrepresentations and omissions alleged herein were material in that

a reasonable person would attach importance to such information and would be induced to act upon such information in paying for Account Protector, whether voluntarily or involuntarily.

95.   Defendants' misrepresentations and omissions alleged herein are objectively material to the reasonable consumer, and therefore reliance upon such misrepresentations and omissions may be presumed as a matter of law.

96.   Plaintiffs   and   the   Class   relied   to   their   detriment   on   Defendants' misrepresentations and omissions by not affirmatively opting out or declining to enroll in the program and by unknowingly and unwillingly paying for Account Protector, or by voluntarily enrolling in Account Protector with the reasonably justified expectation that they were eligible, would remain eligible, and would receive benefits.

97.   Plaintiffs and each member of the Class have been damaged as a result of Defendants' deceptive conduct alleged herein.  Plaintiffs have lost money or property as a result of Defendants' conduct, and they have each paid hundreds of dollars in Account Protector fees. This monetary loss is an economic injury to Plaintiffs and the proposed class caused by their enrollment – whether voluntary or involuntary – in Account Protector.

98.   Defendants willingly and/or knowingly violated New York General Business Law § 349.

99.   As a result of the foregoing, Plaintiffs and the proposed class are entitled to actual damages or fifty dollars ($50.00) (whichever is greater), treble damages, injunctive relief, restitution, attorneys' fees, and costs, in an amount to be proven at trial.

<h3 style="text-align:center">FOURTH CAUSE OF ACTION</h3>
(Violation of <u>N.Y. Gen. Bus. Law §§ 350, <em>et seq.</em> (Consol.))</u><br>(On Behalf of Plaintiffs Clarke, Plaintiff Alvarado, Plaintiff Smith, and the Class and Subclasses from New York)

100.   Plaintiffs specifically reallege and incorporate herein by reference each and every

allegation set forth above.

101.    This Count sets forth a claim for deceptive acts and business practices and false advertising in violation of New York General Business Law §350.

102.    By engaging in the above-described unlawful activities, Defendants have engaged in false advertising in violation of New York General Business Law § 350.

103.    Plaintiffs have sustained injury, damage, and loss and Defendants have been unjustly enriched.

104.    Plaintiffs have already suffered irreparable harm, and will continue to be irreparably damaged unless this Court enjoins Defendants from continuing its unlawful acts. As such, Plaintiffs have no adequate remedy at law.

105.    As a result of the foregoing, Plaintiffs and the proposed class are entitled to actual damages or fifty dollars ($50.00) (whichever is greater), treble damages, injunctive relief, restitution, attorneys' fees, and costs, in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**Violations of State Statutes**
**Prohibiting Unfair and Deceptive Acts and Practices**
**(On Behalf of All Plaintiffs and Class and Subclasses)**

106.    Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

107.    The state deceptive trade practices acts were enacted by the various states following the passage of the Federal Trade Commission Act ("FTC Act"), which prohibits deceptive acts and practices in the sale of products to consumers. The state laws in this area are modeled on the FTC Act and are therefore highly similar in content.

108.    Defendants' actions violate the Deceptive Trade Practices Acts of the various states, as set out above. With respect to the Account Protector, Defendants have engaged in

deceptive practices by representing that services have characteristics and benefits that they do not have; representing that services are of a particular standard, quality, or grade when they are of another; advertising services with intent not to sell them as advertised; making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; and engaging in other conduct which similarly creates a likelihood of confusion or of misunderstanding.

109.    The conduct described herein constitutes unfair or deceptive trade practices predominantly and substantially affecting the conduct of trade or commerce throughout the United States in violation of the state deceptive trade practices acts and other similar state statutes prohibiting unfair and deceptive acts and practices. The deceptive trade practices acts violated by Defendants are set forth in the next paragraph.

110.    The violations of the various state consumer protection acts (Alabama: the Alabama Deceptive Trade Practices Act (Ala. Code §8-19-1 et seq.); Alaska: Alaska Unfair Trade Practices and Consumer Protection Act (Alaska Stat. §45.50.471 et seq.); Arizona: the Arizona Consumer Fraud Statute (Ariz. Rev. Stat. Ann. §44-1521 et seq.); Arkansas: the Arkansas Deceptive Trade Practices Act (Ark. Code Ann. §4-88-101 et seq.); California: the California Consumers Legal Remedies Act (Cal. Civ. Code § 1750, et seq.), the California Unfair Business Practices Act (California Business & Professions Code §17200, et seq.), and the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, et seq.); Colorado: the Colorado Consumer Protection Act (Colo. Rev. Stat. §6-1-101 et seq.); Connecticut: the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. §42-110a et seq.); Washington, D.C. the Consumer Protection Procedures Act (D.C. Code Ann. §28-3901 et seq.); Florida: the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. Ann. §501.201 et seq. (West)) and the

Florida False Advertising Statutes (Fla. Stat. Ann. §817.40 et seq. (West)); Georgia: Uniform

Deceptive Trade Practices Act (Ga. Code Ann. §10-1-370 et seq.); the Fair Business Practices

Act (Ga. Code Ann. §10-1-390 et seq.); and the False Advertising Statute (Ga. Code Ann. §10-1-

420 et seq.); Hawaii: The Hawaii Federal Trade Commission Act (Hawaii Rev. Stat. §480 et

seq.) and the Uniform Deceptive Trade Practice Act (Hawaii Rev. Stat. §481A et seq.); Idaho:

the Idaho Consumer Protection Act (Idaho Code §48-601 et seq.); Illinois: the Illinois Consumer

Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. Ann. §505/1 et seq. (Smith

Hurd)) and the Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. Ann. 510/1 et seq.

(Smith Hurd)); Indiana: the Deceptive Consumer Sales Act (Ind. Code Ann. §24-5-0.5-1 et seq.

(Burns)); Iowa: the Iowa Consumer Fraud Act (Iowa Code Ann. §714.16 (West)); Kansas: the

Kansas Consumer Protection Act (Kan. Stat. Ann. §50-623 et seq.); Kentucky: the Consumer

Protection Act (Ky. Rev. Stat. §367.110 et seq.); Louisiana: the Unfair Trade Practices and

Consumer Protection Law (La. Rev. Stat. Ann. §51:1401 (West)); Maine: the Maine Unfair

Trade Practices Act (Me. Rev. Stat. Ann. Tit. 5 §206 et seq.) and the Uniform Deceptive Trade

Practices Act (Me. Rev. Stat. Ann. Tit. 10 §1211 et seq.); Maryland: the Maryland Consumer

Protection Act (Md. Com. Law Code Ann. §§13-101 et seq., 14-101 et seq.); Massachusetts: the

Consumer Protection Act (Mass. Gen. Laws Ann. Ch. 93A); Michigan: the Michigan Consumer

Protection Act (Mich. Comp. Laws Ann. §445.901 et seq.) and the Michigan Pricing and

Advertising Act (Mich. Comp. Laws Ann. §445.351 et seq.); Minnesota: the Consumer Fraud

Act (Minn. Stat. Ann. §325 F. 69); the False Statement in Advertisement Statute (Minn. Stat.

Ann. §325 F. 67); the Uniform Deceptive Trade Practices Act (Minn. Stat. Ann. §325D.44); and

the Unlawful Trade Practices Act (Minn. Stat. Ann. §325D.13); Mississippi: the Consumer

Protection Act (Miss. Code Ann. §75-24-1 et seq.) and the False Advertising Statutes (Miss.

Code Ann. §97-23-3); Missouri: the Missouri Merchandising Practices Act (Mo. Rev. Stat. §407.010 et seq.); Montana: the Montana Unfair Trade Practices and Consumer Protection Act (Mont. Code Ann. §30-14-101 et seq.); and the Statutory Deceit Statute (Mont. Code Ann. §27-1-712); Nebraska: the Nebraska Consumer Protection Act (Neb. Rev. Stat. §59-1601 et seq.) and the Nebraska Uniform Deceptive Trade Practices Act (Neb. Rev. Stat. §87-301 et seq.); Nevada: the Deceptive Trade Statutes (Nev. Rev. Stat. §§598.0903 et seq., 41.600 et seq.); New Hampshire: the Regulation of Business Practices for Consumer Protection Act (N.H. Rev. Stat. Ann. §358-A:1 et seq.); New Jersey: the New Jersey Consumer Fraud Act (N.J. Stat. Ann. §56:8-1 et seq. (West)); New Mexico: New Mexico Unfair Practices Act (N.M. Stat. Ann. §57-12-1 et seq.); New York: New York Consumer Protection Act (N.Y. Gen. Bus. Law §§349, 350 (Consol.)); North Carolina: North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. §75-1.1 et seq.); North Dakota: Deceptive Act or Practice Statutes (N.D. Gen. Stat. §51-15-01 et. seq.); Ohio: Ohio Consumer Sales Practices Act (Ohio Rev. Code Ann. §1345.01 et seq. (Baldwin)); Oklahoma: Oklahoma Consumer Protection Act (Okla. Stat. Ann. Tit. 15, §751 et seq. (West)) and the Oklahoma Deceptive Trade Practices Act (Okla. Stat. Ann. Tit. 78, §51 et seq. (West)); Oregon: the Unlawful Trade Practices Act (Or. Rev. Stat. §646.605 et seq.) and the Oregon Food and Other Commodities Act (Or. Rev. Stat. §616.005 et seq.); Pennsylvania: Unfair Trade Practices Act and Consumer Protection Law (Pa. Stat. Ann. Tit. 73 §201-1 et seq. (Purdon); Rhode Island: Consumer Protection Act (R.I. Gen. Law §6-13.1-1 et seq.); South Carolina: South Carolina Unfair Trade Practices Act (S.C. Code Ann. §39-5-10 et seq.); South Dakota: South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws Ann. §37-24-1 et seq.); Tennessee: Tennessee Consumer Protection Act (Tenn. Code Ann. §47-18-101 et seq.); Texas: Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code Ann.

114090.1                                    29

§17.41 et seq. (Vernon)); Utah: Utah Consumer Sales Practices Act (Utah Code Ann. §13-11-1 et seq.) and the Utah Truth in Advertising Act (Utah Code Ann. §13-11a-1 et seq.); Vermont: Vermont Consumer Fraud Statute (Vt. Stat. Ann. Tit. 9, §2451 et seq.); Virginia: Virginia Consumer Protection Act (Va. Code 59.1-196 et seq.); Washington: Washington Consumer Protection Act (Wash. Rev. Code Ann. §19.86 et seq.); West Virginia: West Virginia Consumer Credit and Protection Act (W. Va. Code §46A-6-101 et seq.); Wisconsin: Wisconsin Fraudulent Representations Act (Wis. Stat. Ann. §100.18 et seq. (West); Wyoming: Consumer Protection Act (Wyo. Stat. §40-12-101 et seq.) have directly, foreseeably, and proximately caused damages to Plaintiffs and the proposed class in amounts yet to be determined.

111. As a result of Defendants' violations of the Deceptive Trade Practices Acts of the various states prohibiting unfair and deceptive acts and practices, Plaintiffs and members of the proposed class have suffered actual damages for which Defendants are liable.

### SIXTH CAUSE OF ACTION
### Violations of the Truth in Lending Act - 15 U.S.C. §1601 et seq.
### (On Behalf of All Plaintiffs and Class and Subclasses)

112. Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

113. During the relevant time period, Defendants sold the credit services at issue in this lawsuit to the members of the proposed class, engaging in significant interstate commerce.

114. The purpose of the Truth in Lending Act of 1968, as amended, 15 U.S.C. §1601, 1666j and Regulation Z, 12 CFR part 226 ("TILA" and "Regulation Z") is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C.

§1601(a); 12 C.F.R. 226.1(b).

115. TILA requires all solicitations for the extension of credit to clearly, conspicuously and in readily understood language disclose the terms of the commitment that the offeror is extending to the consumer.

116. Congress delegated authority for the implementation of the Truth-in-Lending Act to the Federal Reserve Board ("Board"). 15 U.S.C. §1604. The Board promulgated Regulation Z, which is the Truth In Lending Act's implementing regulation. 12 C.F.R. §§226 *et seq.*

117. Defendants' failure to disclose in its applications, solicitations, billing statement or otherwise that the premium charged for Account Protector is a finance charge, that the monthly benefit payment does not include all fees imposed, and that the interest is charged on penalty fees and costs in connection with Account Protector violates sections 1605 and 1637(a)(3), (a)(4) and (b)(4) of the Truth in Lending Act.

118. As a result of Defendants' violations of the TILA and Regulation Z, Defendants are liable to Plaintiffs and members of the proposed class who seek damages, pursuant to 15 U.S.C. §1640, including actual damages resulting from Defendants' improper and illegal practices, the lesser of $500,000 or 1% of the net worth of Defendants, and costs and reasonable attorney fees.

## SEVENTH CAUSE OF ACTION
### Injunctive Relief
### (On Behalf of All Plaintiffs and Class and Subclasses)

119. Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

120. Plaintiffs ask the Court to grant the remedy of restitution to themselves and to all members of the class who made payments to Defendants for Account Protector. The Plaintiffs

ask the Court to grant the following relief:

    (a)    a refund of all Account Protector payments made to Defendants;

    (b)    a refund to any consumer who was retired and/or unemployed at the time they were sold Account Protector by Defendants;

    (c)    a refund to any consumer who was a senior citizen at the time they were sold Account Protector by Defendants;

    (d)    a full refund to any consumer who was otherwise not eligible for Account Protector due to the restrictions in the coverage at the time the product was sold to the consumer and who paid for the product; and

    (e)    a full refund to any consumer who did not consent to enrollment in Account Protector and who paid for the product.

121.    Plaintiffs seek injunctive relief enjoining Defendants from continuing to engage in the fraudulent, deceitful, unlawful and unfair common scheme as alleged herein.

### EIGHTH CAUSE OF ACTION
#### Declaratory Relief
#### (As to All Plaintiffs, and Class, and Subclasses)

122.    Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

123.    Plaintiffs seek a Declaratory Judgment finding that the conduct of Defendants is in violation of the Deceptive and Unfair Trade Practices of the various states as alleged herein, and enjoining Defendant from continuing in such conduct.

### NINTH CAUSE OF ACTION
#### Unconscionability
#### (On Behalf of All Plaintiffs and Class and Subclasses)

124.    Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

125.    The policies and practices associated with Account Protector are substantively and procedurally unconscionable in the following material respects, among others:

(a)   Defendants unilaterally impose the Account Protector products upon its customers' credit card accounts, thereby failing to disclose to customers that they had been enrolled in Account Protector and that they have the option to "opt out" of Account Protector.

(b)   Defendants did not obtain affirmative consent from subscribers prior to enrolling them in Account Protector;

(c)   Defendants do not provide the terms and conditions of the Account Protector to subscribers until after they have enrolled in Account Protector;

(d)   The written documents that Defendants do eventually provide to subscribers, if any, do not provide subscribers with sufficient information to understand the terms and conditions of the Account Protector;

(e)   The written documents eventually provided, if any, along with other written materials in the possession of Defendants, are contracts of adhesion in that they are standardized forms, imposed and drafted by Defendants, which is a party of vastly superior bargaining strength, and only relegates to the subscriber the opportunity to adhere to them or reject the agreement in its entirety;

(f)   These documents provided to customers are ineffective, ambiguous, deceptive, unfair, and misleading in that they do not require affirmative customer consent (like a signature) and do not unambiguously state that certain customers are per se ineligible to receive benefits, even though Defendants had the information and means of determining eligibility prior to enrolling these customers in Account Protector;

(g)   Defendants do not alert customers that certain individuals are per se ineligible for Account Protector benefits;

(h)   The amount charged in fees for Account Protector is not rationally related to the amount of value the Account Protector provided to subscribers, nor is the value of the Account Protector computable or discernable by subscribers;

(i)   Defendants charge exorbitant fees for Account Protector, much more than the value of the benefits offered or paid out to subscribers, and are able to do so because Defendants do not identify Account Protector as an insurance product, which would require it to provide fees and claims-paid data to state authorities for review and regulation;

(j)   The formula Defendants use to compute Account Protector fees is misleading such that subscribers are unable to budget for this product or understand its overall cost in order to determine its value to subscribers; and

(k)   Defendants operate its customer service centers in such a way as to make it

difficult for subscribers to cancel enrollment, obtain information about the terms and conditions of Account Protector and file claims.

126. Considering the great business acumen and experience of Defendants in relation to Plaintiffs and the proposed class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

127. The imposition of Account Protector fees which excessively exceed the amount of claims-paid by a rate higher than any insurance product would be permitted to charge for premiums is itself unconscionable. Such fees are not reasonably related to Defendants' costs of administering Account Protector and providing the benefits offered.

128. Plaintiffs and the Class and Subclasses have sustained damages as a result of Defendants' unconscionable policies and practices as alleged herein, including but not limited to all fees paid for the Account Protector.

**TENTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff Rosaleen Clarke and the Involuntary Enrollment Subclass)**

129. Plaintiff Rosaleen Clarke restates and realleges the preceding paragraphs of this Complaint as though set out here word for word.

130. In seeking to increase its fee revenue, Defendants enrolled Plaintiff Clarke and the Involuntary Enrollment Subclass into Account Protector without their consent or authorization.

131. By unknowingly paying unauthorized or otherwise fraudulent charges to Defendants for Account Protector, Plaintiff Clarke and the Involuntary Enrollment Subclass conferred a benefit on Defendants, which Defendants knowingly accepted despite the fact that

they were not entitled to such benefit. Such acts were, and are, unconscionable.

132.    Defendants were unjustly enriched by charging Plaintiff Clarke and the Involuntary Enrollment Subclass for illusory benefits, which Plaintiff Clarke and the Involuntary Enrollment Subclass members never requested or authorized.

133.    Defendants were unjustly enriched by charging Plaintiff Clarke and the Involuntary Enrollment Subclass members multiple Account Protector charges if the cardholder had multiple American Express® credit cards.

134.    Defendants were unjustly enriched by forcibly enrolling and charging Plaintiff Clarke and the Involuntary Enrollment Subclass Members who were retired or who were senior citizens for Account Protector even though they were ineligible to receive benefits by the terms of the Account Protector documents.

135.    As a result of Defendants' actions which constitute unjust enrichment, Plaintiff Clarke and the Involuntary Enrollment Subclass Members suffered actual damages for which Defendants are liable. Defendants' liability for such damages should be measured by the extent of Defendants' unjust enrichment.

**ELEVENTH CAUSE OF ACTION**
**(Fraud)**
**(On Behalf of All Plaintiffs and Class and Subclasses)**

136.    Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

137.    Defendants enrolled Plaintiff Clarke and Members of the Involuntary Enrollment Subclass in the Account Protector plan without their affirmative consent or knowledge that they were being enrolled or would be charged on their monthly credit card statements for Account Protector.

Case 1:12-cv-07496-LAK   Document 1   Filed 10/05/12   Page 36 of 39

138.    Defendants knew that Plaintiff Clarke and Involuntary Enrollment Subclass Members had not affirmatively or voluntarily authorized their enrollment in the Account Protector plan.

139.    Defendants induced their customers, including Plaintiff Clarke and the Involuntary Subclass Members, into paying for Account Protector services that they never requested or authorized by involuntarily enrolling them in Account Protector and charging them fees on their credit card statements.

140.    Defendants' fraudulent conduct of involuntarily enrolling Plaintiff Clarke and the Involuntary Enrollment Subclass Members in Account Protector was objectively material in that a reasonable consumer would attach importance to such information as knowing they were enrolled in and charged for Account Protector without their consent.

141.    Plaintiff Clarke and the Involuntary Enrollment Subclass Members reasonably and justifiably relied to their detriment on Defendants' fraudulent nondisclosure of the fact that they had been involuntarily enrolled in Account Protector.  Plaintiff Clarke and the Involuntary Enrollment Subclass Members acted as reasonably prudent consumers by relying on Defendants' fraudulent omissions and failure to disclose that they had been enrolled and paying the Account Protector fees.

142.    Defendants also intentionally omitted material information, such as sending materials about Account Protector to some customers after the fact, if at all, without making it clear to them that they had to affirmatively decline enrollment in order to avoid incurring ongoing charges.

143.    Defendants intentionally perpetuated their fraud by refusing to refund consumers' money after they discovered the charges for Account Protector on their credit card statements

114090.1                                    36

and realized they had been involuntarily enrolled in the plan.

144.    Plaintiff Clarke and the Involuntary Enrollment Subclass Members would not have paid for the unauthorized charges for Account Protector, but for Defendants' knowing fraudulent conduct in enrolling them in Account Protector without their consent.

145.    Plaintiff Clarke and the Involuntary Enrollment Subclass Members have been damaged in that they paid Defendants for unauthorized charges for Account Protector, and by the subsequent time and expense of attempting to dispute such charges that appeared on their American Express® Card credit card statements.

146.    Through advertisements and marketing representations, Defendants intended to and did misrepresent to Plaintiff Alvarado, Plaintiff Smith, and Members of the Voluntary Enrollment Subclass, at the time of purchase and at all relevant times, the eligibility, terms, and conditions of its Account Protector coverage and the qualifications and proof that would be needed to obtain such coverage.

147.    Specifically, Defendants' advertisements stated that Plaintiff Alvarado, Plaintiff Smith, and Voluntary Enrollment Subclass members were eligible, would remain eligible, and would receive benefits under Defendants' Account Protector plan, when these representations were false and misleading.

148.    After and due to seeing and hearing Defendants' advertisements and marketing representations, Plaintiff Alvarado, Plaintiff Smith, and the Voluntary Enrollment Subclass Members reasonably believed, and were reasonably likely to believe, that they were eligible, would remain eligible, and would receive benefits under Defendants' Account Protector plan.

149.    Defendants intended that Plaintiff Alvarado, Plaintiff Smith, and the Subclass rely upon Defendants' false, deceptive, and misleading representations regarding the nature and

for the benefits.

155.    As a result of Defendants' fraudulent conduct and practices, Plaintiffs, the Class, and the Subclasses suffered pecuniary loss in an amount not less than the amount of the monthly fee paid for Defendants' Account Protector plan, plus interest.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray:

A.    That the Court determines that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that the Plaintiffs are proper class representatives, and their counsel are adequate class counsel;

B.    That judgment be entered against Defendants and in favor of Plaintiffs and the Class and Subclasses on the Causes of Action in this Complaint, for injunctive and equitable relief as requested above, for actual, compensatory, punitive, and treble damages in an amount to be determined at trial;

C.    That Declaratory Judgment be entered against Defendants finding that Defendants' conduct is in violation of New N.Y. Gen. Bus. Law §§ 349, *et seq.*, N.Y. Gen. Bus. Law §§ 350, *et seq.*, and the various states' deceptive trade practice acts, and enjoining Defendants from continuing in such conduct;

D.    That judgment be entered imposing interest on damages, litigation costs, and attorneys' fees against Defendants; and

E.    For all other and further relief as this Court may deem necessary and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: ___October 4, 2012___   Respectfully submitted,

**PARIS ACKERMAN & SCHMIERER LLP**

Bryan H. Mintz
David S. Paris
Ross Schmierer
101 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 228-6667
Facsimile: (973) 629-1246
david@paslawfirm.com
ross@paslawfirm.com

**NAGEL RICE, LLP**

Bruce Nagel
Jay Rice
Diane Sammons
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 618-0400
Facsimile: (973) 618-9194
bnagel@nagelrice.com
jrice@nagelrice.com
dsammons@nagelrice.com

**CAREY DANIS & LOWE**

John J. Carey
Francis J. "Casey" Flynn, Jr.
Tiffany M. Yiatras
8235 Forsyth Blvd., Ste. 1100
St. Louis, MO 63105
Telephone: (800) 721-2519
Facsimile: (314) 721-0905
jcarey@careydanis.com
casey@jefflowepc.com
tyiatras@caseydanis.com

**ATTORNEYS FOR PLAINTIFFS AND THE
PROPOSED CLASS AND SUBCLASSES**